UNITED STATES of America,

v.

**Paul MANGIARDI, and Eric K. Mangiardi, and Walter Regula, Defendants.**

No. 4:CR–95–0233.

United States District Court, M.D. Pennsylvania.

April 21, 1997.

George J. Rocktashel, Assistant United States Attorney, Williamsport, PA, for United States of America.

Patrick A. Casey, Assistant Federal Public Defender, Scranton, PA, for defendant Paul J. Mangiardi.

Joshua D. Lock, Harrisburg, PA; Pamela A. Roth, Carleton K. Montgomery, Anne B. Perry, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for defendant Eric K. Mangiardi.

William I. Arbuckle, III, Goodall & Associates, State College, PA, for defendant Walter Regula.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On September 21, 1995, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendants Paul J. Mangiardi, Eric K. Mangiardi, and William J. Contino with conspiracy (1) to commit mail fraud, (2) to conduct financial transactions with the proceeds of unlawful activity (the mail fraud) to promote the carrying on of the unlawful activity, and (3) to conduct financial transactions with the proceeds of unlawful activity (the mail fraud) to conceal or disguise the proceeds of the unlawful activity. The indictment also sets forth fifteen substantive counts of mail fraud.

On June 18, 1996, in conjunction with a plea agreement, the government filed a superseding information charging Contino with conspiracy to commit mail fraud. Contino entered a plea of guilty to the charge on July 19, 1996, and is awaiting sentencing.

On August 28, 1996, a grand jury sitting in the Middle District of Pennsylvania returned a superseding indictment charging defendants Paul J. Mangiardi, Eric K. Mangiardi, and Walter Regula with: conspiracy (1) to commit mail fraud; (2) to conduct financial transactions with the proceeds of unlawful activity (the mail fraud) to promote the carrying on of the unlawful activity; (3) to conduct financial transactions with the proceeds of unlawful activity (the mail fraud) to conceal or disguise the proceeds of the unlawful activity; (4) to make false, material statements to agents of a federal agency; and (5) to obstruct justice. The superseding indictment also sets forth fifteen substantive counts of mail fraud.

The defendants named in the superseding indictment all have entered pleas of not guilty, and jury selection currently is scheduled for October 9, 1997.

A number of pre-trial motions by the parties have been addressed by separate memorandum and order. Before the court is a motion by Eric K. Mangiardi to dismiss in part Count One of the indictment for failure to state an offense; the motion is now applicable to the superseding indictment.

### DISCUSSION:

Succinctly stated, the superseding indictment charges defendants with operating corporate entities in a fraudulent manner. They offered plans purporting to comply with the Employee Retirement Income Security Act (ERISA), as amended, 29 U.S.C. §§ 1001 et seq., which in fact did not comply with ERISA. Instead, among other things, money from various employers was pooled (as opposed to ensuring that the plans were self-funded), and the plans were dangerously under-funded. As a result, numerous individuals and employers were injured.

Eric K. Mangiardi moves to dismiss Count One of the superseding indictment to the extent it relates to the Pennsylvania Insurance Department. As relevant, the superseding indictment provides:

From on or before January 1988, and continuing through on or about May 11, 1993, in Williamsport and South Williamsport, Lycoming County, within the Middle District of Pennsylvania and elsewhere, the defendants,

PAUL J. MANGIARDI

ERIC K. MANGIARDI

WALTER REGULA

and co-conspirator WILLIAM J. CONTINO did knowingly and willfully combine,

conspire, confederate and agree with each other, and other persons both known and unknown to the Grand Jury, to commit offenses against the United States as follows:

(a) to devise a scheme and artifice ... to defraud the Pennsylvania Insurance Department of and concerning its governmental function and rights to ensure that citizens of the Commonwealth of Pennsylvania receive honest insurance services, by means of false or fraudulent pretenses, representations and promises and for the purpose of executing said scheme and artifice to defraud utilizing the mails, ... in violation of Title 18, United States Code, Sections 1341; 1346;

Superseding Indictment (record document no. 130) at 13–14 ¶ 2(a).

Both the government and defendants discuss this aspect of the fraud charges in terms of a fiduciary relationship between Paul J. Mangiardi and the Pennsylvania Insurance Department. This discussion misses the point as to the applicability of the mail and wire fraud statutes to the concept of defrauding citizens of the "honest services" of public officials as charged in the indictment. The concept is discussed at length in *United States v. Sawyer*, 85 F.3d 713 (1st Cir.1996), in which a lobbyist was convicted of providing trips, gifts, and entertainment to members of the Massachusetts Legislature in return for favorable legislation. In determining whether the activity constituted mail and wire fraud, the First Circuit provided an overview of the law of "honest services" fraud. Id. at 723–725.

■ The government must prove beyond a reasonable doubt: (1) a knowing and willful participation in a scheme or artifice to defraud with the specific intent to defraud; and (2) use of the mails or interstate wire communications in furtherance of the scheme. In general, the statutes reach schemes to defraud the victim of property or some other item of economic value. This concept was broadened to encompass schemes to defraud citizens of the intangible right to the honest services of their public officials. The basis of this right is that a public official acts as a trustee for the citizens and the state, and

therefore owes a fiduciary duty to them. Id. at 723.

■ However, the Supreme Court ruled that the mail and wire fraud statutes did not prohibit schemes to defraud citizens of the right to honest governmental services. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Congress reacted by enacting 18 U.S.C. § 1346, which provides that "scheme or artifice to defraud" includes a "scheme or artifice to deprive another of the intangible right of honest services." Pub.L. 100–690, Title VII, § 7603(a), 102 Stat. 4508 (1988). The purpose of § 1346 was to overrule *McNally* and to reinstate the prior law that the mail and wire fraud statutes reach schemes to deprive citizens of the honest services of public officials. *Sawyer* at 723–724.

The typical case of honest services fraud is the bribery of a public official or the failure of a public official to disclose a conflict of interest. The basic idea, however, is that the public is not getting what it expects and deserves: honest, faithful, disinterested service from a public official. This concept applies whether the official is bribed or fails to disclose a conflict of interest. Id. at 724–725.

■ Finally, the scheme or artifice must lead to actual or intended actual injury. That is, the official must be performing a discretionary function which the scheme or artifice is intended to influence because it is the exercise of a discretionary function (the "service") which must be the target of the scheme. Id. at 725.

■ The superseding indictment does not support a charge of mail fraud intended to deprive citizens of the honest services of a public official. No official within the Insurance Department is alleged to have been bribed or to have profited personally from the activities of defendants or their business entities. Rather, the conduct alleged in the superseding indictment is directed toward *avoiding* the consequences of the honest services performed by the Insurance Department in enforcing Pennsylvania's insurance laws.

As noted, much of the argument presented by the parties in their briefs relates to the existence or non-existence of a fiduciary relationship between defendants and the Insurance Department.[1] A case cited by the parties which appears to confuse the issue before this court is *United States v. Neufeld,* 908 F.Supp. 491 (S.D.Ohio 1995), in which a doctor was convicted of mail fraud relating to his referral of patients for home health care services. *Neufeld,* however, does not apply to the instant case.

Justice Stevens, in his dissent in *McNally,* described the way in which the mail fraud statutes had been interpreted, including schemes and artifices involving deprivations of the honest services of public officials, of the honest services of fiduciaries, and of privacy and other non-monetary rights. 483 U.S. at 362–364, 107 S.Ct. at 2882–84 and nn. 1–4 (Stevens, J., dissenting; citing, *inter alia, United States v. Boffa,* 688 F.2d 919 (3d Cir.1982), which involved deprivation of the honest services of union officials). While *McNally* specifically involved the honest services of public officials, the appellants' convictions were overturned because the statutes did not apply to instances in which the scheme or artifice was intended to deprive the victim of an intangible right. This reasoning would apply to all three of the classes of cases described by Justice Stevens.

In this case, the government argues that the mail fraud statute applies because there was a fiduciary relationship between Paul J. Mangiardi and the Insurance Department. We disagree for two reasons. First, the indictment does not charge mail fraud based on any sort of breach of a fiduciary duty; it charges that defendants conspired to deprive the Insurance Department of its right and duty to provide honest services.

■ Second, we see no fiduciary duty between the Insurance Department and any defendant. The government argues that, as statutory liquidator, the Insurance Department "stands in the shoes" of the business entities allegedly used by defendants for fraudulent purposes. Actually, the statutory conditions applying to liquidation require that an "employe [sic], officer, manager, trustee, or general agent of any insurer, and any other person with executive authority over or in charge of any segment of the insurer's affairs" must cooperate with the Insurance Department, and may not obstruct or interfere with the Insurance Department. 40 Pa. Stat. Ann. § 221.6(a), (b). "Cooperation" entails replying promptly and in writing to inquiries from the Insurance Department, § 221.6(a)(1), and making records and property available to the Insurance Department, § 221.6(a)(2). These requirements are a necessity because of the adversarial nature of the relationship. The statute does not create the relationship of trust and confidence which is termed "fiduciary."[2]

Our reason for rejecting the government's argument is made plainer when placed into a clearer context. Suppose that A and B hold up a gas station and escape with cash but leave incriminating evidence. The police identify the culprits, and are ready to make an arrest. A learns of this, calls B and tells him to get out of town before they are apprehended. According to the government's theory, A and B are guilty of wire fraud[3] because they have used the telephone to escape, thereby depriving the public of the honest services of the police in making an arrest.

Extending the analogy, suppose that A is arrested and agrees to cooperate. He identifies B as his co-conspirator, but calls B to warn him before an arrest can be made. Again, under the government's theory, A has breached a fiduciary duty to the police and is guilty of wire fraud.

1. Defendants Regula and Eric K. Mangiardi, even if they did not themselves act as alleged fiduciaries, would be criminally liable or the actions of Paul J. Mangiardi, if the court found that a fiduciary relationship existed, based on the allegations of the superseding indictment that they were co-conspirators, and because they can be liable for aiding and abetting.

2. The same reasoning applies to the government's argument concerning the settlement agreement between the Insurance Department and Paul J. and Eric K. Mangiardi, which embodies the same sort of relationship.

3. Section 1346 applies to wire fraud as well as mail fraud.

In either instance, this is not the type of conduct which is proscribed by the mail and wire fraud statutes because the services of the governmental entity/fiduciary is not rendered dishonest by the efforts to elude honest enforcement of the law.

The government also argues that the scheme or artifice to defraud deprived the Insurance Department of a property right in the form of licensing authority, and of a line of credit to be obtained by Paul J. Mangiardi and Eric K. Mangiardi. The description of the scheme or artifice to defraud recited above includes no such deprivation.

Finally, the government argues in its supplemental brief that an offer by Meridian Trust Company to pay $50,000.00 in settlement of claims against West Branch shows that the Insurance Department was a fiduciary acting on behalf of those with claims against West Branch. Again, there is no indication that the conduct of any defendant caused or specifically intended to cause the Insurance Department to provide anything but honest services; rather, the superseding indictment reflects efforts to avoid the effects of honest services.

We agree with defendants that the allegation of mail fraud victimizing the Pennsylvania Insurance Department should be dismissed, as the superseding indictment simply does not support the charge as drafted. However, the remainder of the allegations in the superseding indictment regarding the Insurance department will remain unchanged. The allegations concerning the investigation of defendants' business entities, their closure and liquidation, and other facts related to the activities of the Insurance Department and defendants' reactions thereto clearly are relevant to the issue of fraudulent intent. The only language of the superseding indictment affected by this holding is the phrase, "and to defraud the Pennsylvania Insurance Department of and concerning its governmental function and rights to ensure that citizens of the Commonwealth of Pennsylvania receive honest insurance services," set forth at page 13 ¶ 2(a).