**SEMICONDUCTOR ENERGY LABORATORY CO., LTD., Plaintiff,**

v.

**SAMSUNG ELECTRONICS CO., LTD., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc., Defendants.**

**No. CIV. A. 96–1460–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 20, 1998.

Gregory L. Murphy, Alexandria, VA, for Plaintiff.

Thomas J. Scott, for Defendants.

*MEMORANDUM OPINION*

CACHERIS, District Judge.

This case is before the Court on Plaintiff's Motion for Summary Judgment on Defendants' Racketeer Influenced and Corrupt Organizations ("RICO") Counterclaims.

*I.*

Plaintiff, Semiconductor Energy Laboratory Co., Ltd. ("SEL") originally alleged that Defendants Samsung Electronics Company, Samsung Electronics America, and Samsung Semiconductor, Inc. (collectively "Samsung") infringed three of its patents. SEL has since dismissed its claims as to two of the patents. Samsung filed a counterclaim alleging antitrust violations as well as violations of Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. Sections 1961–1968, or the RICO statute, and its New Jersey counterpart, New Jersey Statute 2C:41–2. Samsung argues that SEL fraudulently obtained the three patents originally at issue in this lawsuit and then filed infringement claims against Samsung in an effort to receive money for the patents.

## II.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). "A district court must grant summary judgment if, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874 (4th Cir.1992). However, a court may only grant a summary judgment motion "if the non-movant failed to make a sufficient showing on an element on which he had the ultimate burden of proof." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir.1991).

"The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for th[at] [party]." *Anderson*, 477 U.S. at 252. In reviewing the evidence submitted by the parties, "the court must draw any inferences in the light most favorable to the non-movant." *Brock*, 933 F.2d at 1259. The court must ultimately "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Id.*

## III.

Samsung claims that SEL violated 18 U.S.C. Section 1962(a) and (c).[1] To prove RICO violations, the RICO plaintiff must demonstrate a "pattern of racketeering activity" which must consist of at least two instances of racketeering activity. 18 U.S.C. § 1961(5); *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1135 (4th Cir.1993). In this case, Samsung asserts a "three-party pass-through fraud structure", arguing that SEL committed numerous acts of mail and/or wire fraud[2] on the United States Patent and Trademark Office ("PTO") which resulted in approval of certain patent applications. According to Samsung, SEL then sought money from Samsung and others by threatening them with litigation over these fraudulently obtained patents. Put another way, Samsung claims that SEL defrauded the PTO, but the intended, albeit indirect, victim of the fraud is Samsung.

Mail and wire fraud are both predicate acts of racketeering activity for RICO purposes. 18 U.S.C. § 1961(1). However, SEL argues that the PTO cannot be "defrauded" of approval of patent applications under the federal mail and wire fraud statutes. Specifically, SEL argues that the PTO does not lose money or property when it grants a patent, therefore, in granting a patent, the PTO cannot be the victim of mail or wire fraud.

In support, SEL cites *Mylan Lab., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1071–73 (D.Md.1991). In that case, the RICO plaintiff alleged that the defendants committed predicate acts of fraud against the Food and Drug Administration ("FDA") in obtaining FDA approval of their abbreviated new drug applications ("ANDAs"). The District of Maryland ruled that an unissued license is not property in the government's hands for fraud purposes, therefore, the defendants' conduct before the FDA did not amount to predicate acts under RICO.[3] *Mylan Lab., Inc. v. Akzo,*

---

1. Section 1962(a) and (c) state:

    (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

    (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]

2. *See* 18 U.S.C. §§ 1341, 1343.

3. The court declined to follow the Third Circuit's decision on this issue in *United States v. Martinez*, 905 F.2d 709, 715 (3rd Cir.1990), and instead followed the decisions of the First, Second, Sixth, Seventh, Eighth and Ninth Circuits. *Mylan Lab., Inc. v. Akzo, N.V.*, 770 F.Supp. at

N.V., 770 F.Supp. at 1072–73. Although the Fourth Circuit reversed a related decision in *Mylan Lab., Inc. v. Matkari, supra.,* it expressly stated "[W]e affirm a ruling that precludes Mylan from relying on, as its sole basis for the predicate acts in its RICO counts, the theory that the FDA was defrauded out of its ANDA approvals within the meaning of the mail and wire fraud statutes." *Mylan Lab., Inc. v. Matkari,* 7 F.3d at 1137.

In response, SEL argues that *Mylan Lab., Inc. v. Akzo, N.V.* and the cases it cites are distinguishable because they involved licenses, not patents, and patents involve valuable property interests. In addition, Samsung argues that by deceiving the PTO, SEL deprived Samsung and others of the "intangible right of honest services" in violation of the mail fraud statute. *See* 18 U.S.C. § 1346.

Samsung cites no cases which indicate that approval of a patent application by the PTO should be treated differently than approval of an ANDA by the FDA. In both cases, the United States confers certain rights, but it does not forfeit anything. Just as the FDA does not lose money or property when it grants a license, the PTO does not lose money or property when it issues a patent. In addition, Samsung makes no allegations and no evidence indicates that the PTO provided anything less than honest services or that SEL intended for them to provide dishonest services. Furthermore, there is no claim by Samsung that it had an intangible right to SEL's honest services.

Because SEL's alleged conduct before the PTO does not violate the federal mail and wire fraud statutes, that conduct cannot satisfy the predicate acts requirement under RICO. If such conduct could properly be considered predicate acts, then nearly every inequitable conduct claim in a patent case could be brought as a RICO claim. However, the Patent Act imposes a severe penalty for those who mislead or wrongfully withhold information in an attempt to obtain a patent:

all claims in the patent will be rendered unenforceable. *See J.P. Stevens & Co., Inc. v. Lex Tex, Ltd., Inc.,* 747 F.2d 1553, 1561 (Fed.Cir.1984). Additionally, if Samsung can prove its allegations, not only will the patents at issue be·rendered unenforceable, but Samsung may be entitled to attorney's fees pursuant to 35 U.S.C. Section 285. Through these provisions, the Patent Act provides appropriate remedies for the type of misconduct from which Samsung seeks to recover in its RICO claims.

In its counterclaim, Samsung alleges that SEL's fraudulent acts also include "numerous use of mail and/or wire fraud on Samsung and others[.]" Samsung's Amended Answer and Counterclaim, ¶ 117. However, while the evidence indicates that some companies own licenses to the relevant patents, Samsung has not provided evidence that SEL has committed mail or wire fraud with respect to Samsung or others. Rather, Samsung relies on the theory that SEL's alleged fraud on the PTO satisfies the predicate acts requirement. Because Samsung provides no evidence on which a jury could reasonably find the predicate acts necessary to sustain a RICO claim, SEL is entitled to summary judgment on this issue.

■ The New Jersey RICO statute is modeled after the federal statute, *State v. Ball,* 141 N.J. 142, 661 A.2d 251, 258 (1995), and the relevant sections, 2C:41–2(a) and (c), require proof of a pattern of racketeering activity. Samsung relies on the same predicate acts in support of its New Jersey RICO claim. Because those acts do not support a federal RICO violation, they fail to support a New Jersey RICO violation.

■ In addition, Samsung fails to satisfy the "enterprise" element of Section 1962(c). Samsung argues that the RICO enterprise consists of SEL, Dr Shunpei Yamazaki (SEL's president), and Gerald Ferguson (SEL's patent attorney). However, the Fourth Circuit has ruled that under Section 1962(c), the RICO enterprise and the defen-

1072 (citing, e.g., *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 792–93 (1st Cir.1990), *United States v. Schwartz,* 924 F.2d 410, 417 (2nd Cir.1991), *United States v. Murphy,* 836 F.2d 248, 254 (6th Cir.1988), *Toulabi v.*

*United States,* 875 F.2d 122, 125 (7th Cir.1989), *United States v. Granberry,* 908 F.2d 278, 280 (8th Cir.1990), *United States v. Kato,* 878 F.2d 267, 268–69 (9th Cir.1989)).

dant must be distinct. *Palmetto State Med. Ctr., Inc. v. Operation Lifeline,* 117 F.3d 142, 148 (4th Cir.1997).

Samsung contends that SEL, Yamazaki, and Ferguson should be considered separate entities because each had a duty to the PTO, and Yamazaki and Ferguson committed independent acts of fraud on the PTO. However, "[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2nd Cir.1994) (citations omitted); *see also Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2nd Cir.1996)(attorneys acting on behalf of corporation are agents under *Riverwoods Chappaqua Corp.*).

SEL generates its income by obtaining and licensing patents. It does not manufacture or distribute any products. Samsung does not argue that Yamazaki or Ferguson acted beyond the scope of their agency when they committed the alleged misconduct. Therefore, because the RICO enterprise is not distinct from the RICO defendant in this case, SEL is entitled to summary judgment on Samsung's Section 1962(c) claims.

For these reasons, Samsung fails to make a showing sufficient to establish the existence of the essential elements of its RICO claims. Accordingly, SEL's Motion for Summary Judgment on Samsung's Racketeering Counterclaims is GRANTED.

An appropriate Order granting summary judgment in favor of SEL on Counts Six, Seven, Eight, and Nine of Samsung's counterclaim shall issue.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby Ordered that:

1) Plaintiff Semiconductor Energy Laboratory Co., Ltd.'s Motion for Summary Judgment on Defendants Samsung Electronics Company, Samsung Electronics America, and Samsung Semiconductor, Inc.'s RICO Counterclaim is GRANTED as to Counts Six, Seven, Eight, and Nine; and

2) the Clerk shall forward copies of this Order and accompanying Memorandum Opinion to all counsel of record.