Kathleen DEMPSEY f/k/a Kathleen Eagye, Plaintiff,

v.

Gabriele SANDERS, Derek Sanders, Sanders Sanders LLC, Sanders Sanders Home, Inc., and Gabriele Sanders LLC., Defendants.

No. 98 CIV. 8093 DAB.

United States District Court, S.D. New York.

Feb. 22, 2001.

John F. Gangemi, Brooklyn, NY, for Plaintiff.

S. Pitkin Marshall, New York City, for Defendants.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Defendants Gabriele Sanders, Sanders Sanders LLC, Sanders Sanders Home, Inc., and Gabriele Sanders, LLC, move for a judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure with respect to the Plaintiff's RICO claims under 18 U.S.C. §§ 1962(a), (b), (c), and (d).[1]

When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court must proceed as if it were a motion to dismiss. *See Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994); *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir. 1989); *National Ass'n of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories,* 850 F.2d 904, 909 n. 2 (2d Cir.1988). It is well settled practice that on a motion to dismiss, the factual allegations of the complaint are to be accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). The Court should dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Accordingly, the factual allegations set forth in Plaintiff's verified complaint and RICO statement are considered herein and are presumed to be true for the purpose of deciding the motion for a judgment on the pleadings.

## I. BACKGROUND

The present action arises out of transactions related to the formation of a business partnership between Plaintiff Kathleen Dempsey and Defendant Gabriele Sanders, dedicated to the importing and manufacture of a Nepalese fabric known as pashmina. Defendants currently consist of one person and three corporate entities: Gabriele Sanders, Plaintiff's business partner (Compl.¶ 12–13); Sanders and Sanders Home, Inc. (hereafter "SSH"), a corporation established previous to the events surrounding this litigation, wholly owned by Gabriele Sanders and devoted to the manufacture and sale of pashmina (Id.¶ 15–16); Sanders Sanders, LLC (hereafter "SSLLC"), a limited liability company formed between Gabriele Sanders and Kathleen Dempsey in 1997 and the focus of the alleged fraud (Id.¶ 19–28); and Gabriele Sanders, LLC (hereafter "GSLLC"), a third corporation formed by Gabriele Sanders in 1998, also engaged in producing pashmina for the American market (Pl.'s RICO Stmt. at 12).

Plaintiff alleges that the Defendants schemed to deprive her of her capital contributions of $220,000 to their joint venture, SSLLC, by making oral and written misrepresentations to her and by excluding her from company affairs. (Compl.¶ 5). She alleges that in violation of a 1997 Operating Agreement with the Plaintiff governing SSLLC, Defendant Gabriele Sanders transferred corporate assets and accounts receivables with the fraudulent intent of promulgating her own business and squandering the money for her own personal use and enjoyment. (Id.) Plaintiff further alleges fourteen separate counts of fraud spanning a time period between June, 1997 when Defendant Gabriele Sanders first approached her to propose a partnership, and September, 1998, when Plaintiff learned of the existence of a third corporate entity (GSLLC), solely owned by Gabriele Sanders and engaged in the same business. In short, the fourteen causes of action allege:

1. On or about July, 1998, Plaintiff learned that the funds wired by her around June, 1997, into the account of SSH were not utilized to satisfy that company's debts in anticipation of its dissolution, but rather to pay off the outstanding credit card bills

---

**1.** Plaintiff has since consented to the dismissal of the case against Defendant Derek Sanders. (Defs.' Mem. Law at 6.)

of former Defendant Derek Sanders. (Id. ¶ 15–18.)

2. On or about August, 1997, Plaintiff learned that Defendant Gabriele Sanders, contrary to her promises, had never dissolved SSH but had led her to believe otherwise for the sole purpose of inducing Plaintiff to invest funds into SSLLC. (Id. ¶ 19–28)

3. On August 15, 1997, $45,000 of Plaintiff's funds were utilized by Gabriele Sanders to purchase a commercial leasehold that was to serve as both the corporate office of SSLLC and the residence of Gabriele and Derek Sanders, but Gabriele Sanders never intended to, nor ever did, pay rent to the corporation. (Id. ¶ 29–33.)

4. By October 31, 1997, Gabriele Sanders had not contributed her capital investment share as required by the 1997 Operating Agreement, had not made a full accounting of SSLLC's outstanding debts in the financial books and records, and unbeknownst to Plaintiff, had sent correspondence to contractors indicating that SSLLC was experiencing cash-flow difficulties due to Plaintiff's shortfalls. (Id. ¶ 34–39.)

5. On or about June, 1998, Gabriele Sanders admitted in a telephone call that she used corporate funds to purchase a private vehicle. (Id. ¶ 40–41.)

6. On November 4, 1997, Gabriele Sanders barred Plaintiff from the corporate offices and later stated, via fax, that the exclusion was due to Plaintiff bringing her dog to the premises wherein Sanders' three large dogs resided. (Id. ¶ 42–44.)

7. On or about January, 1998, Plaintiff learned that Gabriele Sanders had unilaterally entered into a contract Plaintiff did not consider to be in the best interest of the corporation. (Id. ¶ 45–48.)

8. On or about April, 1997, Gabriele Sanders misrepresented the existence of a Bank Account in order to facilitate her misappropriation of corporate funds. (Id. ¶ 49–53.)

9. On or about May, 1998, Gabriele Sanders falsely represented to Plaintiff that she would employ an independent accountant when it was never her intention to do so. (Id. ¶ 54–57.)

10. On or about March, 1997, Plaintiff came to believe that the marriage between Gabriele and Derek Sanders was a fraud perpetrated in order to confer green card status upon Gabriele, a citizen of Germany. (Id. ¶ 58–62.)

11. On June 25, 1997, Gabriele Sanders communicated to Plaintiff via fax her interpretation of the 1997 Operating Agreement. (Id. ¶ 63–64.)

12. On or about June 30, 1998, Plaintiff discovered that Gabriele Sanders defrauded Plaintiff and the Bank by inappropriately draining funds from a dual signature account without Plaintiff's knowledge or consent. (Id. ¶ 65–67.)

13. On or about July 27, 1998, Gabriele Sanders unilaterally canceled a contract with a contractor. (Id. ¶ 68–69.)

14. Gabriele Sanders continues to operate SSLLC in violation of the Operating Agreement. (Id. ¶ 70.)

The various alleged material misrepresentations made by Defendant were done via telephone and mailed letters and involved the transfer of money through checks and wire transfers. (Id. ¶ 72.)

As such, Plaintiff alleges that Defendants utilized the United States Mails in executing the fraud and thereby committed repeated violations of 18 U.S.C. § 1341 relating to mail fraud and 18 U.S.C. § 1342 relating to wire fraud. (Id. ¶ 72)

Moreover, Plaintiff alleges that Defendants' acts constitute a pattern of racketeering activity violative of the provisions (a), (b), (c), and (d) of § 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

## II. DISCUSSION

### A. RICO

RICO was enacted by Congress principally with the broad mandate of preventing organized crime from infiltrating businesses and other economic entities. *See, e.g., U.S. v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.1979). RICO's purpose, however, is not so broad as to include deterrence of all unlawful acts, and accordingly, the § 1961 statutory list of offenses that may serve as predicate acts under RICO is exhaustive. *See, e.g., Harvey v. Harvey*, 931 F.Supp. 127 (D.Conn.1996). Where such a predicate act is found, RICO provides for substantial punishment in the form of treble damages, costs, and attorneys fees. 18 U.S.C. § 1965. Thus, courts have found that alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations." *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1001 (E.D.N.Y.1995); *see also Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998)("[Civil RICO] is an unusually potent weapon—the litigation equivalent of a thermonuclear device … courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."); *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.*, 1987 WL 6154, at *2 (S.D.N.Y. 1987) ("[Expansive use of] civil RICO has had the perverse effect of itself being used for 'extortive' purposes."). It is thus with this admonition that this Court views the sufficiency of Plaintiff's pleadings in the instant case.

Under § 1962, a person commits a RICO violation when he (a) invests income derived from a pattern of racketeering in an enterprise; or (b) controls an enterprise through a pattern of racketeering activity; or (c) participates in an enterprise through a pattern of racketeering activity; or (d) conspires to violate subsections (a), (b) or (c). 18 U.S.C. § 1962. The threshold requisite common to subsections (a), (b), and (c) of a civil RICO claim, then, is a showing of a "pattern of racketeering activity." Moreover, where a plaintiff fails to state a cause of action for substantive violations of RICO through subsections (a)-(c), its claim of conspiracy to violate RICO under § 1962(d) must also fail. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996), *rev'd on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). Accordingly, where a pleading fails in showing a "pattern of racketeering activity", it must fail in its entirety.

In the instant action, Defendants contend that the Plaintiff has not satisfied their requisite RICO burden since the totality of the alleged predicate acts can be characterized as a single scheme by the collective defendants to harm a single victim, thus failing to plead a pattern of racketeering activity.

### B. Pattern of Racketeering Activity

"Racketeering activity" is defined as commission of one of the offenses enumerated in 18 U.S.C. § 1961(1). Mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1342, are two such offenses.

As to what constitutes a pattern under RICO, the statute states only that it "requires at least two acts of racketeering activity [i.e., predicate acts]" within a 10-year period. 18 U.S.C. § 1961(5). The Supreme Court subsequently narrowed the definition to require a showing of at least two racketeering predicates (1) that are

related and (2) that amount to, or threaten the likelihood of, continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). As the Supreme Court explained: "A pattern is not formed by sporadic activity, ... and a person cannot be subjected to the sanctions of [RICO] simply for committing two widely separated and isolated criminal offenses... Instead, the term "pattern" itself requires the showing of a relationship between the predicates, ... and of the threat of continuing activity... It is this factor of continuity plus relationship which combines to produce a pattern." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893; *see also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir.1994) (quoting *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893). Similarly, the Second Circuit has explained that "[t]he purpose of the relationship and continuity requirements is to 'prevent the application of RICO to the perpetrators of "isolated" or "sporadic" criminal acts.'" *Azrielli*, 21 F.3d at 520 (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.1989) (en banc)).

■ Plaintiff argues that the predicate acts are closely related and that both open-ended and close-ended continuity applies in the instant case. Defendants respond that Plaintiff has pled a single scheme by a single defendant against a single victim and as such, cannot make out a RICO claim.

### 1. Relatedness

■ As to the first prong, predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Schlaif-*er Nance & Co.*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901). The Second Circuit has noted that "[a]n interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions." *Azrielli*, 21 F.3d at 520 (quoting *Indelicato*, 865 F.2d at 1382). Further, for the relatedness element to be satisfied, the predicate acts must be related, directly or indirectly, to each other as well as to the enterprise. *See United States v. Locascio*, 6 F.3d 924, 943 (2d Cir.1993) (explaining that relatedness requirement is satisfied even if predicate acts are not directly related to each other so long as both are related to RICO enterprise in such a way that they become indirectly connected to each other); *United States v. Long*, 917 F.2d 691, 697 (2d Cir.1990).

In the case at bar, the predicate acts (with the exception of the alleged green card fraud[2]) are certainly related, given their temporal proximity (essentially lasting approximately a year from June, 1997 to July, 1998), the involvement of the same participants (i.e. Gabriele Sanders and the various corporate entities serving her interests), same victim (Plaintiff), and the same purpose, i.e. to obtain Plaintiff's personal funds through material misrepresentations involving their joint venture. In fact, the acts are related to such a degree as to raise the concern that the predicate acts so painstakingly laid out by Plaintiff in thirteen separate events actually comprise a single scheme to defraud a single victim, thereby failing the requirement of continuity necessary to constitute the

---

**2.** Plaintiff alleges that the fraudulent marriage orchestrated between Derek and Gabriele Sanders for the purpose of procuring a green card for Gabriele Sanders is a violation of 8 U.S.C. § 1154(c). However, this statute is not included among the federal statutory crimes that may serve as predicate acts for a RICO claim. *See* 18 U.S.C. § 1961(1)(B). Accordingly, this allegation will not be considered in the RICO analysis.

"long-term criminal conduct" Congress sought to reach through RICO.

### 2. *Continuity*

The second element necessary to establish a pattern of racketeering activity is continuity, and it requires allegations of "either an 'open-ended' pattern of racketeering activity, (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." *Schlaifer Nance & Co.*, 119 F.3d at 97 (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466, (2d Cir.1995)). In order to determine whether a threat of "open-ended" continuity exists, a court must examine the nature of either the predicate acts alleged or the enterprise at whose behest the predicate acts were performed. *See id.* (citations omitted). For "close-ended" continuity, activity continuing for a matter of years is sufficient to satisfy "a substantial period of time." *Id.* (citing *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989)). Though there is no bright line test for determining what length of time is adequate for a finding of a close-ended pattern, the Second Circuit has declined to find an eleven month period of predicate activity sufficient and has noted that other Circuit Courts considering the issue have consistently refused to find predicate acts occurring over a similar (or even longer) period met the continuity requirement. *See GICC Capital Corp.*, 67 F.3d at 468. Moreover, close-ended continuity may be based upon a number of factors, including the number of participants, the number of victims and the presence of separate schemes. *See id.* at 467.

Essentially, courts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established. *See Schlaifer Nance & Co.*, 119 F.3d at 97 ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."); *GICC Capital Corp.*, 67 F.3d at 468 (finding that single-victim acts by a handful of participants was not "multi-faceted scheme" sufficient to meet continuity requirement); *CPF Premium Funding, Inc. v. Ferrarini*, No. 95 Civ. 4621, 1997 WL 158361, at *9 (S.D.N.Y. April 3, 1997) (finding thirty-five specific acts of misconduct carried out against the same victim did not constitute continuity as required under RICO); *China Trust Bank of New York v. Standard Chartered Bank, PLC*, 981 F.Supp. 282, 287–88 (S.D.N.Y.1997) (finding that although a number of acts of misconduct were alleged, they were all carried out by a single defendant against one victim, pursuant to a single scheme and thereby failed both open and close-ended continuity requirement).

There was no open-ended continuity here. The alleged fraud involved was designed to extract money from the Plaintiff. Given this limited goal, the scheme was inherently terminable. It defies logic to presume that a threat of continued fraud upon the Plaintiff exists at the time of this lawsuit. Moreover, Plaintiff has in no way asserted that the alleged scheme is representative of the manner in which the Defendant or Defendant's corporations conduct business, and the Court cannot infer a threat of repeated fraud absent such allegations.

As to close-ended continuity, the little over twelve months alleged in the instant case is insufficient to support the "substantial period of time" necessary to claim closed-ended continuity. Moreover, the acts were all directed at only Plaintiff herself and occurred within that relatively short time span. The only alleged perpetrator is Gabriele Sanders, the sole proprietor of two of the defendant corporations, the third of which was formed by Gabriele Sanders as a joint venture with the Plaintiff. This scheme, as painted by Plaintiff's allegations, is nothing more than a classic example of a single-victim, single-defen-

dant fraud dressed up to resemble a multi-faceted RICO claim. It is simply not the type of activity constituting the "long-term criminal conduct" which Congress intended to target with the passage of RICO. *See* S.Rep.No. 91–617, at 158 (1969) (explaining pattern requirement).

The Plaintiff's failure to plead sufficiently a "pattern of racketeering activity" is sufficient in and of itself to warrant dismissal of the instant case under Rule 12(c). See discussion supra at p. 226.

## C. State law claims

Having dismissed the RICO claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c), which provides that a federal district court may decline to exercise jurisdiction over a supplemental state law claim if it has dismissed all claims over which it has original jurisdiction.

Moreover, contrary to the belief of Plaintiff (Compl.¶ 2), this Court does not have subject matter jurisdiction under § 1332 because diversity is defeated by the shared New York citizenship of Plaintiff and Defendants[3].

## III. CONCLUSION

For the reasons set forth above, Defendants Gabriele Sanders, SSH, SSLLC, and GSLLC's motion to dismiss the RICO claims under 18 U.S.C. §§ 1962(a), (b), (c), and (d), pursuant to Federal Rule of Civil Procedure 12(c) is GRANTED. The Clerk of the Court is directed to close the case.

SO ORDERED.

---

**3.** Plaintiff is an indisputable citizen of New York. (Compl.¶ 7.) Defendant Gabriele Sanders is a German national but is treated as a citizen of the state in which she is domiciled, which by Plaintiff's own admission, is New York. (Compl ¶ 8.) Moreover, Defendant SSLLC is a New York Corporation. (Compl.¶ 10)