John WILLIAMS and Tina Williams, individually and as guardians of their minor children, Linda McElver, individually and as guardian of her minor child, Laurie Enger, Nancy Barrera, individually and as guardian of her minor children, Nancy Bostic and Lisa Ferguson, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The DOW CHEMICAL COMPANY, Dow Agrosciences, L.L.C. and John Does # 1 Through 100, Defendants.

No. 01 CIV. 4307(RMB).

United States District Court, S.D. New York.

March 21, 2003.

Curtis V. Trinko, Law Offices of Curtis V. Trinko, LLP, Kenneth F. McCallion, Rajan Sharma, McCallion & Associates, LLP, New York City, for John Williams, Tina Williams, Plaintiffs.

Morton Donald Dubin, III, Daniel J. Thomasch, Richard W. Mark, Orrick, Herrington & Sutcliffe LLP, New York City, Dean T. Barnhard, Joseph G. Eaton, Robert D. MacGill, Barnes & Thornburg, Indianapolis, IN, for The Dow Chemical Company, Dow Agrosciences, Defendants.

Dean T. Barnhard, Joseph G. Eaton, Robert D. MacGill, Barnes & Thornburg, Indianapolis, IN, for John Doe 1–100, Defendant.

## ORDER

BERMAN, District Judge.

### I. Introduction

On or about May 5, 2001, Plaintiffs filed this class action against Defendant Dow Chemical Company ("Dow") alleging, *inter*

*alia,* that Dow had fraudulently obtained approval from the Environmental Protection Agency ("EPA") for the use and sale of Dursban, a non-agricultural pesticide. On August 27, 2001, Plaintiffs filed an Amended Class Action Complaint, adding Dow AgroSciences, L.L.C. ("Dow AgroSciences"), the Dow subsidiary that manufactures Dursban, as a defendant, and claims for conspiracy and racketeering in violation of 18 U.S.C. § 1961 *et seq.,* the Racketeer Influencing Corrupt Organizations Act ("RICO"). On November 8, 2001, Dow and Dow AgroSciences filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and a motion for summary judgment pursuant to Rule 56. Thereafter, Plaintiffs sought and were granted leave to submit a Second Amended Complaint rather than respond to the motion. The Second Amended Complaint added nine (new) causes of action, including *inter alia,* claims of false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq.;* intentional and negligent misrepresentation under state law; and breach of express warranty under state law. The Second Amended Complaint also named "John Does # 1 through 100" as defendants (collectively with Dow and DowAgroSciences, "Defendants").

On February 15, 2002, Defendants filed a (second) motion for judgment on the pleadings pursuant to Rule 12(c), ("Def.Mem."), asking the Court to dismiss with prejudice six of the thirteen counts in the Second Amended Complaint and to dismiss Plaintiffs' allegations of "fraud on the EPA" and "failure to warn or failure to disclose information." On March 18, 2002, Plaintiffs submitted a memorandum of law opposing Defendants' motion ("Pl.Mem."). On April 2, 2002, Defendants filed a reply memorandum ("Def.Reply"). The Court heard helpful oral argument on March 3, 2003. **For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.**

## II. Background

The following facts set forth in the Second Amended Complaint are taken as true for the purposes of this motion. *See Dempsey v. Sanders,* 132 F.Supp.2d 222, 224 (S.D.N.Y.2001).

Plaintiffs bring this class action to redress physical and property injuries allegedly caused by Dursban.[1] SAC ¶ 2. The (seven) individual Plaintiffs sue on their own behalf, on behalf of their children, and on behalf of two "nationwide classes." SAC ¶ 1. The first class consists of all children under the age of eighteen who were "exposed to 'Dursban' products of Defendants" and who have symptoms consistent with chemical poisoning. *Id.* The second class consists of all persons who "have suffered injury to their employment, business and/or property" from exposure to Dursban.[2] *Id.*

Dursban is a pesticide which was developed and patented by Dow in or around

---

1. The Second Amended Complaint alleges that Defendants manufacture a number of different products under the trade name "Dursban." SAC ¶ 2. As defined in the Second Amended Complaint, and as used in this Order, Dursban will refer to any non-agricultural pesticide manufactured by Dow AgroSciences containing the active ingredient chlorpyrifos. *Id.*

2. The Plaintiffs are described in the Second Amended Complaint as follows: John and Tina Williams ("Williamses"), sue on their own behalf and on behalf of their three minor children; (ii) Linda McElver ("McElver"), sues on her own behalf and on behalf of her minor child; (iii) Laurie Enger ("Enger") sues on her own behalf; (iv) Enger's daughter Nancy Barrera ("Barrera"), sues on her (Barrera's) own behalf and on behalf of her minor children; (v) Nancy Bostic ("Bostic"); and (vi) Lisa Ferguson ("Ferguson") sue on their own behalf. Plaintiffs do not define the class periods.

1965. SAC ¶ 59. Between 1965 and 2000, Dursban became one of the most widely used pesticides in the United States, and could be found in products ranging "from pet collars to roach spray." SAC ¶ 45. Between 1965 and 1989, Dow was "responsible for all of the research, testing marketing, manufacture and sale of Dursban products in the United States." SAC ¶ 38. In 1989, a wholly owned Dow subsidiary, Rofan Services, Inc., formed a joint venture with Epco, Inc. ("Epco"), a wholly owned subsidiary of Eli Lily and Company ("Eli Lily"), called DowElanco. *Id.* From 1989 on, Dow and Dow Elanco "acted in concert and cooperated in order to manufacture, market and distribute Dursban products to the public." *Id.*[3]

Since 1981, Dursban has been subject to the registration requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* SAC ¶ 3. FIFRA provides that no pesticide may be sold or distributed in the United States unless it has first been registered by the EPA. *See* 7 U.S.C. § 136a(a).[4]

Plaintiffs allege that, since at least 1965, "Defendants have engaged in a conspiracy and fraudulent scheme, involving a continuous pattern of racketeering activity through mail and wire fraud, to mislead the public and consumers (as well as the EPA) about the safety of Dursban, a prod-uct which was dangerously defective . . . when used in [its] intended . . . manner." SAC ¶ 7. Plaintiffs allege that Defendants effected their RICO scheme through an enterprise consisting of "all persons or entities who were or are associated in fact with the Defendants' design, testing, marketing, sale and distribution of Dursban and Dursban products, and the promotion of sales of Dursban including, but not limited to, the entities or persons that have assisted Defendants in doctoring scientific evidence and withholding scientific information from the public," SAC ¶ 105, including all named Defendants, SAC ¶ 105(a), the employees and agents of Defendants who "subscribed to and actively pursued the 'common goal' " of the enterprise, SAC ¶ 105(b), Eli Lilly and its wholly owned subsidiary Epco, SAC ¶ 105(c), and the "numerous pesticide applicators across the United States such as Terminix, Orkin and Pelican Pest Control" that distributed "Defendants' misrepresentations to consumers through pamphlets and informational materials." SAC ¶ 105(d).[5]

Plaintiffs contend that Dow obtained "approval of Dursban by the federal regulatory authorities under FIFRA by intentionally concealing the dangerously defective nature of its product," SAC ¶ 60, and has spent more than $100 million to "falsely suggest that Dursban is safe when used as intended and that chlorpyrifos does not cause unreasonable adverse effects on hu-

---

**3.** In 1997, Epco sold its interest in DowElanco to another wholly owned Dow subsidiary, and on January 1, 1998, DowElanco was renamed Dow AgroSciences. SAC ¶ 38.

**4.** The EPA will register a pesticide (and authorize its sale) if it determines, *inter alia,* that the pesticide's labeling complies with FIFRA requirements and that the pesticide "will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5). A proposed label complies with FIFRA if, among other things, it includes directions for the pesticide's use that

adequately "protect the public from personal injury." 40 C.F.R. § 156.10(i)(1)(i).

**5.** The Second Amended Complaint does not specify what role each Defendant played in the alleged scheme. The John Doe Defendants, for example, are described as "members of Defendants' conspiracy and RICO Enterprise . . . who subscribed to the common goal of the Enterprise and civil conspiracy . . . and contributed to furthering those common goals through actions, decisions and orders of the Defendants and other persons or entities associated with the Enterprise." SAC ¶ 40.

mans." SAC ¶ 62. Defendants allegedly did not provide "adverse incident reports" to the EPA although, under FIFRA, Defendants were required to do so. SAC ¶¶ 64–65. In August of 1995, Dow paid a $876,000 fine for failing to inform the EPA about reports of "249 Dursban poisoning cases that it had received." SAC ¶ 64. Plaintiffs also allege that Defendants "continuously misrepresented scientific literature, studies and other test results to the EPA." SAC ¶ 76. Among other incidents, on or about March 31, 1997, Defendants submitted a review of adverse incident reports and poison surveillance data to the EPA which included statements that were "clearly inaccurate or misleading." SAC ¶ 77.

Defendants also used false advertising "to misrepresent the dangers and health risks of Dursban to the public and consumers who, in justifiable reliance upon such misrepresentations, allowed the pesticide to be used in their homes and/or allowed themselves or their family members to be exposed to Dursban." SAC ¶ 69.[6] Defendants allegedly distributed to pest control companies newsletters and promotional materials containing false and misleading representations about the safety of Dursban "with the specific intent that such material be provided to homeowners who sought to have their homes treated for [sic] pesticides." SAC ¶ 70. Plaintiffs allege that "these false and misleading representations were, clearly, intended to convince Plaintiffs and members of the Class that Dursban was not only effective, but

that it was safe and did not constitute a serious health risk." *Id.*

By 1999, "enough adverse incident reports and scientific data" about products containing chlorpyrifos had come to light, and the EPA entered into negotiations with pesticide manufacturers, including Defendants, "in order to compel them to voluntarily withdraw or phase out" the use of products containing chlorpyrifos in the United States. SAC ¶ 82. On or about June 8, 2000, the EPA reached an agreement with the Defendants to "restrict virtually all residential usage of Dursban and to phase out the residential and commercial sales of the product altogether." SAC ¶ 4. As part of that agreement, the EPA cancelled FIFRA registration of a number of Dursban products. *See* 65 Fed.Reg. 76, 233 (Nov. 27, 2000) ("As part of the Agreement, the signatory registrants that hold the pesticide registrations of manufacturing-use pesticide products containing chlorpyrifos have asked EPA to cancel their registrations for these products. In addition, these companies asked EPA to cancel or amend their registrations for end-use products containing chlorpyrifos."). While the agreement between Defendants and the EPA bans "[a]ll uses of Dursban in schools, daycare centers, nursing homes, and shopping centers, among other places," the EPA "will not order retail products containing Dursban to be pulled from store shelves." SAC ¶ 83–84. It is not clear from the Second Amended Complaint whether the EPA cancellation affects some or all of Defendants' Dursban

---

**6.** Apart from this general allegation of "justifiable reliance" in the Second Amended Complaint, no individual Plaintiff alleges that he or she relied upon any of the misleading advertisements and promotional materials before allowing Dursban to be used in their homes. The Williamses allege that they saw the misleading promotional materials after they decided to use Dursban in their home. SAC ¶¶ 11–12. "In reliance upon these false

misstatements, Plaintiffs continued to reside in their home, exacerbating their exposure, and did not attempt to clean or remediate their home for Dursban contamination." SAC ¶ 12. McElver alleges that she received a misleading telephone call from a physician "employed by Defendants" after her home had been treated with Dursban. SAC ¶ 20; *see also infra* at n. 12.

products; nor is the extent of the restrictions imposed on the use of Dursban in the future made clear.

### III. Standard of Review

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers,* 47 F.3d 14, 16 (2d Cir.1995). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). A complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *D'Alessio v. New York Stock Exch.,* 258 F.3d 93, 99 (2d Cir.2001) (internal quotation omitted). Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (quotation omitted). This standard also applies to RICO claims. *See NOW v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). The Court is not required in a RICO case to accept as true "conclusions of law or unwarranted deductions." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994).

### IV. Analysis

Defendants move for judgment on the pleadings with respect to six of the thirteen counts in the Second Amended Complaint, namely Plaintiffs' claims of: (i) violation of RICO, 18 U.S.C. § 1962(c); (ii) RICO conspiracy, 18 U.S.C. § 1962(d); (iii) false advertising under the Lanham Act, 15 U.S.C. § 1125; (iv) intentional and negligent misrepresentation under state law; (v) breach of express warranty under state law; and (vi) permanent injunction. Defendants also seek judgment on the pleadings "as to all claims to the extent they rest upon allegations of . . . 'fraud on the EPA' and . . . failure to warn or disclose facts not contained in the pesticide labeling." Def. Mem. at 1.[7]

### A. RICO—18 U.S.C. § 1962(c)

18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The "pattern of racketeering" alleged here is a series of acts of mail and wire fraud directed at (i) the EPA and (ii) consumers of Dursban. SAC ¶ 110. Defendants allegedly defrauded the EPA by "presenting false, inaccurate and/or misleading" information about scientific testing, SAC ¶ 107(d), and by withholding information that reflected the "dangerous nature of Dursban." SAC ¶ 107(f). Defendants allegedly defrauded consumers of Dursban by disseminating false and misleading information through advertising, pamphlets and telephone calls. SAC ¶¶ 107(a)-(c).

Defendants argue, *inter alia,* that: (i) allegations of fraud directed at the EPA do

---

7. Defendants do not at this time challenge Plaintiffs' claims for: (i) declaratory judgment, 28 U.S.C. §§ 2201, 2202; (ii) common law medical monitoring relief; (iii) public nuisance; (iv) civil conspiracy; (v) negligent testing, design and formulation; (vi) strict liability-ultra-hazardous activity; and (vii) violation of the New York State General Business Law, Section 349.

not constitute "racketeering activity" as defined by 18 U.S.C. § 1961(1), *see* Def. Mem. at 19 ("the alleged 'fraud on the EPA' does not establish the predicate acts required by RICO"); and (ii) allegations of fraud directed at consumers do not support a RICO claim because consumers were not injured in their business or property "by reason of" a violation of § 1962. *See* Def. Mem. at 14 ("no Plaintiff alleges that his or her reliance upon a misrepresentation by Defendants regarding Dursban caused any RICO injury").[8]

To state a RICO claim for damages (under 18 U.S.C. § 1962(c)), a plaintiff has two pleading burdens. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, a plaintiff must establish "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce." *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990); *Moss*, 719 F.2d at 17. Second, a plaintiff must also allege he or she was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see also First Nationwide Bank*, 27 F.3d at 767; *Moss*, 719 F.2d at 17.

■ RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918–19 (3d Cir.1991) ("The significance of section 1964(c)'s plain language is clear: RICO plaintiffs may recover damages for harm to business and property only, not physical and emotional injuries due to harmful exposure to toxic waste."); *Laborers Local 17, Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir.1999) (noting "the lack of a RICO damages remedy for even direct personal injuries (such as those suffered by the individual smokers)"); *Major League Baseball Props., Inc. v. Price*, 105 F.Supp.2d 46, 49 (E.D.N.Y.2000) ("Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages' for personal injuries") (*quoting Oscar v. Univ. Students Co-op. Assoc.*, 965 F.2d 783, 785 (9th Cir. 1992)); *Le Paw v. BAT Indus. P.L.C.*, No. 96 Civ. 4373(JG), 1997 WL 242132, at *2 (E.D.N.Y. Mar. 6, 1997) ("In other words, claims for personal injuries or emotional distress are not cognizable under RICO.")

### 1. Fraud on the EPA

■ The fraudulent statements and concealments allegedly directed at the EPA by Defendants do not constitute racketeering activity.[9] *See, e.g., Corcoran v. American Plan Corp.*, 886 F.2d 16, 20 (2d Cir.1989) (fraudulent scheme directed at state insurance regulator "did not allege acts of mail fraud which could support a

---

8. Defendants also argue, among other things, that Plaintiffs have failed adequately to allege the existence of a RICO enterprise. Def. Mem. at 9; *see also Kaczmarek v. Int'l Bus. Machs., Corp.*, 30 F.Supp.2d 626, 630 (S.D.N.Y.1998) ("To the extent plaintiffs allege that the enterprise also included third party manufacturers, dealers and resellers, plaintiffs have failed to distinguish this association of entities from the typical and ordinary participants who act separately for the purpose of distributing any product."). Because the Court determines that Plaintiffs' RICO claims fail for the reasons discussed *infra*, "further analysis of Plaintiffs' RICO claim is unnecessary." *Media Group, Inc. v. Island Mortgage Network, Inc.*, 183 F.Supp.2d 559, 580 (E.D.N.Y.2002).

9. Plaintiffs have alleged that Defendants' engaged in mail and wire fraud "in order to mislead the EPA to continue to allow Dursban to be sold as an EPA-registered pesticide." SAC ¶ 65.

claim under RICO"). While "racketeering activity" may include mail and wire fraud in violation of 18 U.S.C. § 1341, and 18 U.S.C. § 1343, Plaintiffs' allegations of fraud on the EPA cannot be considered racketeering activity because the alleged scheme was designed to obtain EPA regulatory approval of Dursban, not to deprive the EPA of money or property.[10] *See, e.g., Cleveland v. United States,* 531 U.S. 12, 20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (" § 1341 does not reach fraud in obtaining a state or municipal license of the kind here involved, for such a license is not 'property' in the government regulator's hands .... [W]e think it beyond genuine dispute that whatever interests Louisiana might be said to have in its video poker licenses, the State's core concern is regulatory."); *United States v. Schwartz,* 924 F.2d 410, 417 (2d Cir.1991) (false statements made in obtaining a federal export license did not constitute mail fraud under 18 U.S.C. § 1341 because "an unissued license does not constitute property in the hands of the government for federal fraud statute purposes."); *Corcoran,* 886 F.2d at 20 ("the mail fraud statute protects only the government's interest as property-holder, excluding protection of a governmental entity in its capacity as a regulator").

Plaintiffs (unconvincingly) argue that Defendants' fraud on the EPA deprived Plaintiffs of the "intangible right to honest services by the EPA." Pl. Mem. at 23. Typically, "the honest services theory of mail fraud is directed primarily at the deterrence and punishment of corruption among public officials." *United States v. Vinyard,* 266 F.3d 320, 326 (4th Cir.2001). Plaintiffs' do not allege that the EPA performed its duties dishonestly. *See Semiconductor Energy Lab. Co. v. Samsung Elec. Co.,* 4 F.Supp.2d 473, 476 (E.D.Va. 1998) ("Samsung makes no allegations and no evidence indicates that the [United States Patent and Trademark Office] provided anything less than honest services or that [defendant] intended for them to provide dishonest services"); *see also United States v. Mangiardi,* 962 F.Supp. 49, 53 (M.D.Pa.1997) ("this is not the type of conduct which is proscribed by the mail and wire fraud statutes because the services of the governmental entity/fiduciary is not rendered dishonest by the efforts to elude honest enforcement of the law").

### 2. Fraud on Consumers

■ Plaintiffs' allegations of mail and wire fraud directed at consumers of Dursban also fail to support a claim under 18 U.S.C. § 1962(c) because the Second Amended Complaint does not allege that any of the Plaintiffs suffered a RICO injury to business or property "by reason of" the alleged fraud.[11] "By reason of" means that there must be a causal connection

---

10. To adequately plead mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343, a plaintiff must allege: (i) a scheme or artifice to defraud, (ii) the use of the mails or wires in furtherance of the scheme, (iii) to deprive another of money, property, or the intangible right of honest services. *See United States v. Handakas,* 286 F.3d 92, 100 (2d Cir.2002); *see also Mezzonen v. Wright,* No. 97 Civ. 9380, 1999 WL 1037866, at * 6 (S.D.N.Y. Nov. 16, 1999).

11. Plaintiffs appear to concede this point by not responding to Defendants' argument. Instead, Plaintiffs seem to rest their RICO claim (principally) on allegations of fraud against the EPA. *See* Pl. Mem. at 15. And, Plaintiffs do not appear to argue that their (conclusory) allegations of fraud directed at the public and consumers of Dursban could support a RICO claim. *See, e.g., Summit Props., Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 557 (5th Cir.2000) ("Today we are invited to read RICO as establishing a federal products liability scheme complete with treble damages and attorney fees for the benefit of end-users of defective products who never relied on manufacturers' alleged misrepresentations of product quality. We are unpersuaded that RICO

between the prohibited conduct and the plaintiff's injury. *See, e.g., Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."). "A plaintiff alleging predicate acts sounding in fraud—such as those instances of mail fraud and wire fraud alleged by [Plaintiff] here—must prove justifiable detrimental reliance to establish factual causation." *Blue Cross & Blue Shield, Inc. v. Philip Morris, Inc.,* 113 F.Supp.2d 345, 369 (E.D.N.Y.2000); *see also Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992) ("to establish the required causal connection, the plaintiff [must] ... demonstrate that the defendant's misrepresentations were relied on"); *Shaw v. Rolex Watch U.S.A., Inc.,* 726 F.Supp. 969, 973 (S.D.N.Y.1989) ("any injury suffered by Shaw must result from reliance on defendants' alleged fraud in order to meet the causation requirements of Section 1964(c)").

Defendants (correctly) argue that "Plaintiffs must—but cannot—show that their reliance upon the alleged acts of mail and wire fraud caused their RICO injury." Def. Mem. at 22. The Plaintiffs who allege reliance on fraudulent statement(s) of Defendants—McElver and the Williamses—allege that they suffered physical injuries, not injuries to business or property. *See* SAC ¶¶ 12, 21; *see also In re Crazy Eddie Sec. Litig.,* 812 F.Supp. 338, 355 (E.D.N.Y. 1993) ("This court found, in its September 1992 Order, that not one of [the class plaintiffs] could show that he or she relied on Crazy Eddie financial statements in purchasing Crazy Eddie securities. The class plaintiffs therefore cannot show injury by reason of mail or wire fraud."); *THC Holdings Corp. v. Tishman,* No. 93 Civ.

5393(KMW), 1996 WL 291881, at *5 (S.D.N.Y. May 31, 1996) ("Even reading the complaint liberally, it is apparent that [plaintiff] does not claim that it relied upon defendants' omissions or that their conduct was the cause of its RICO injuries.").

### B. RICO—18 U.S.C. § 1962(d)

Because Plaintiffs fail to state a claim under 18 U.S.C. § 1962(c), the RICO conspiracy claim fails as well. *See* Def. Mem. at 4 n. 4; *see also Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir.1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (citation omitted), *vacated on other grounds,* 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Nasik Breeding & Research Farm, Ltd. v. Merck & Co., Inc.,* 165 F.Supp.2d 514, 541 (S.D.N.Y.2001) ("because Nasik has failed to assert a substantive RICO claim under Section 1962(c), its conspiracy claim under Section 1962(d) must likewise be dismissed").

### C. Lanham Act

■ Plaintiffs allege that Defendants violated 15 U.S.C. § 1125(a)(1)(B) by "falsely and deceptively representing that Dursban is safe when used as intended." SAC ¶ 170. Defendants argue that Plaintiffs lack standing to bring a claim under the Lanham Act because they "are not competitors of Defendants and cannot allege a competitive injury as a result of Defendants' alleged conduct." Def. Mem. at 25. Defendants are correct. And, Plaintiffs do not appear to respond to Defendants' argument in their opposition papers.

"[T]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Telecom Int'l Am., Ltd. v. AT & T Corp.,* 280 F.3d 175,

can be extended so far by such a marriage of

distinct duties and liability regimes.")

193–94 (2d Cir.2001). Plaintiffs allege that they were harmed as consumers, not competitors, of Dursban. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F.Supp. 1114, 1125 (S.D.N.Y.1993) ("the Second Circuit has limited standing to commercial parties, excluding 'mere consumers' ").

### D. Intentional and Negligent Misrepresentation

Plaintiffs allege that by "continuing to manufacture, create, design, test, package, supply, market, sell, advertise and otherwise distribute Dursban ... for use by the Plaintiffs and the consuming public, while failing to warn Plaintiffs of the dangers of using Dursban ... Defendants intentionally and/or negligently misrepresented that Dursban was fit for use, merchantable and reasonably safe for its intended purpose." SAC ¶ 156. Defendants ask the Court to dismiss the property damage and personal injury misrepresentation claims of four Plaintiffs (Enger, Barerra, Bostic and Ferguson), and to dismiss the property damage claims of the Williamses and McElver, for two reasons: (i) misrepresentation claims based on fraudulent omission or failure to warn are preempted by FIFRA, *see* Def. Mem. at 28 ("the failure to warn and nondisclosure allegations legally have no place in this case"); and (ii) misrepresentation claims based on affirmative misstatements must assert that the Plaintiffs relied on such misstatements. *See* Def. Mem. at 25 ("a plaintiff must allege justifi-

able reliance in order to state a claim for intentional or negligent misrepresentation") [12]

### 1. FIFRA Preemption

 Defendants convincingly argue that common law tort claims based on "fraudulent omission," "fraudulent concealment" or "failure to warn" are preempted by FIFRA. FIFRA provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [the Act]," 7 U.S.C. § 136v(b), and thereby precludes "state common law tort claims which would create additional or different labeling requirements from those required" by the EPA. *Johnson v. Monsanto Chem. Co.*, 129 F.Supp.2d 189, 193 (N.D.N.Y.2001); *see also Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 563 (1st Cir.1996) (FIFRA preemption "includes state causes of action as well as laws and regulations"); *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 249 (3d Cir.1999) (same); *Jack v. Orkin Exterminating Co., Inc.*, No. 97 Civ. 7012, 2001 WL 25641, at *2 (E.D.N.Y. Jan. 5, 2001) ("Thus, where a cause of action requires proof that a product's packaging and labeling should have included additional, different or more clearly stated warnings than those required by FIFRA, it is preempted by FIFRA provisions.").[13]

Where a "state law claim is premised on inadequate labeling or a failure to warn,

---

**12.** Defendants do not challenge the personal injury claims of McElver and Williamses—i.e., those claims based on the alleged misrepresentations that convinced McElver and the Williamses to remain in their homes and exacerbate their exposure to Dursban. *See* Def. Mem. at 27; *see also* SAC ¶¶ 12, 22.

**13.** Under the Supremacy Clause of the United States Constitution, art. VI, cl. 2, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are "without effect." *Maryland*

*v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). An otherwise valid state law is preempted if: (i) Congress expressly preempts the state law; (ii) Congress completely occupies the field; (iii) compliance with both federal and state law is impossible; or (iv) the state law presents an obstacle to the achievement of the full purposes and objectives of Congress. *See Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 603–07, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991).

the impact of allowing the claim would be to impose an additional or different requirement for the label or packaging." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 608 (8th Cir.1999). "It is immaterial whether an inadequate labeling or failure to warn claim is brought under a negligence or products liability theory." *Id.* "When a claim, however couched, boils down to an assertion that a pesticide's label failed to warn of the damage plaintiff allegedly suffered, the claim is preempted by FIFRA." *Etcheverry v. Tri-Ag Serv., Inc.*, 22 Cal.4th 316, 93 Cal. Rptr.2d 36, 993 P.2d 366, 377 (2000). "If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.1993).[14] Plaintiffs' misrepresentation claims, which are based on allegations that Defendants "fail[ed] to warn," SAC ¶ 156, or "failed to disclose," SAC ¶ 157, the dangers of Dursban or that Defendants sold Dursban "without warning of inherent dangers," Pl. Mem. at 29, fail because they require proof that Dursban's "packaging and labeling should have included additional, different or more clearly

stated warnings than those required by FIFRA, [and] is preempted by FIFRA provisions." *Orkin Exterminating*, 2001 WL 25641, at *2.

### 2. Reliance

Defendants also establish that Plaintiffs' misrepresentation allegations fail because they do not include reliance. "In each of the relevant jurisdictions, a plaintiff must allege justifiable reliance in order to state a claim for intentional or negligent misrepresentation." Def. Mem. at 25. The "misrepresentation claims of four Plaintiffs (Enger, Barerra, Bostic and Ferguson) necessarily fail because they do not allege the threshold fact that they saw or heard a statement by Defendants upon which they relied." Def. Mem. at 26. The Williams and McElver Plaintiffs' claims (for property damage) should be dismissed because those Plaintiffs are not alleged to have relied upon any statements made by Defendants before their homes were treated with Dursban. *Id.*[15]

Under the law of each Plaintiff's home state, a party is required to allege "justifiable reliance" in order adequately to plead either fraudulent or negligent misrepresentation.[16] *See, e.g., River Glen As-*

---

14. Although the United States Court of Appeals for the Second Circuit has yet to consider the question, nine federal appellate courts have held that FIFRA preempts state law claims premised upon failure to warn. *See Vermont Log*, 96 F.3d at 563–65; *Hawkins*, 184 F.3d at 249; *Worm v. American Cyanamid Co.*, 5 F.3d 744, 748 (4th Cir.1993); *MacDonald v. Monsanto*, 27 F.3d 1021, 1024–25 (5th Cir.1994); *Shaw v. Dow Brands*, 994 F.2d 364, 371 (7th Cir.1993); *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887, 888 (8th Cir. 1994); *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 560 (9th Cir.1995); *Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.*, 959 F.2d 158, 162 (10th Cir.1992); *Papas*, 985 F.2d at 518.

15. *See supra*, at n. 12

16. The parties agree that the New York law applies to the claims of the Williamses; that California law applies to McElver's claims; that Idaho law applies to Enger and Barerra's claims; that Illinois law applies to Bostic's claim; and that Mississippi law applies to Ferguson's claim. *See* Def. Mem. at 25; Pl. Mem. at 29–30; *see also In Matter of Arbitration between Tehran–Berkeley Civil & Envtl. Engineers and Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984). The law of each state is virtually identical in requiring an allegation of justifiable reliance in order to adequately plead an affirmative misrepresentation claim. *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 133 (2d Cir. 1997).

*socs., Ltd. v. Merrill Lynch,* 295 A.D.2d 274, 743 N.Y.S.2d 870, 871 (1st Dep't 2002); *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601, 608 (1995); *Board of Ed. v. A, C & S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 592 (1989); *Arnona v. Smith,* 749 So.2d 63, 66–67 (Miss.1999); *Hines v. Hines,* 129 Idaho 847, 934 P.2d 20, 24 (1997).

■ Plaintiffs Enger, Barrera, Bostic and Ferguson fail to allege that they received, heard, or relied upon any misrepresentations made by Defendants. SAC ¶¶ 29–36. *See, e.g., Modern Track Mach., Inc. v. Bry–Lon, Ltd.,* 197 Ill.App.3d 560, 144 Ill.Dec. 65, 554 N.E.2d 1104, 1107 (1990) ("[h]aving failed to adequately plead justifiable reliance, plaintiff has not stated a cause of action for intentional misrepresentation"). Similarly, the Williams and McElver Plaintiffs do not allege reliance upon a misstatement before their homes were treated with Dursban; both allege that they were convinced to stay in their homes after Dursban was applied. *See* SAC ¶¶ 10, 20–22 ("In reliance upon this false representation, McElver and her son left home for an eight day period. After they returned, their symptoms became gradually worse . . . ."). While this is sufficient continue the Williams and McElver claims for personal injuries, their property damage claims must fail. *See, e.g., Fane v. Zimmer, Inc.,* 927 F.2d 124, 130 (2d Cir. 1991) ("There was no evidence that [plaintiff] had any knowledge about the device prior to or during its implantation prior to or during its implantation in her left hip and thigh. Therefore, any representations made by [defendant] had no impact . . . ."); *Gross. v. Diversified Mtg. Investors,* 438 F.Supp. 190, 196 (S.D.N.Y.1977) ("there can be no reliance or connection between plaintiff's purchase transaction and reports and statements issued after his purchase").

### E. Express Warranty

■ Defendants argue that Plaintiffs have failed adequately to plead an express warranty claim because "Plaintiffs do not allege facts showing that any representation was the 'basis of the bargain' for a purchase of Dursban." Def. Mem. at 27. Plaintiffs do not appear to contest Defendants' position, but, instead, argue (unpersuasively) that Defendants are relying "upon a technical pleading deficiency, i.e., that the Second Amended Complaint does not plead reliance upon express warranties as the basis of the bargain for any of the named Plaintiffs." Pl. Mem. at 28. The deficiency is more than technical.

To plead an express warranty claim, a plaintiff must allege that the actionable representation was the "basis of the bargain." *See* Uniform Commercial Code ("UCC") § 2–313 ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the description.")[17] The Second Amended Complaint fails to allege that any of the Plaintiffs heard, saw or relied upon any representation by Defendants before allowing Dursban to be used in their home. Only McElver and the Williamses allege that they spoke with (a representative of) Defendants; yet they did not have those communications until after Dursban had been used in their homes. *See, e.g., Traub v. Cornell Univ.,* No. 94–CV–502, 1998 WL 187401, at *11 (N.D.N.Y. April 15, 1998) (plaintiffs' "express warranty claims must be dismissed because they cannot show that any purchaser relied on the statement").

---

**17.** *See* N.Y.U.C.C. § 2–313 (McKinney 2002) (New York); Idaho Code § 28–2–313 (Idaho); 810 Ill. Comp. Stat. 5/2–313 (2002) (Illinois); Cal. Com.Code § 2313 (2002) (California); Miss.Code § 75–2–313 (1999) (Mississippi).

## F. Permanent Injunction

Defendants argue that Plaintiffs' application for a permanent injunction must fail because Plaintiffs "allege only prior acts and injuries, which does not show likelihood of future injury," and because "FIFRA expressly preempts the state law duties Plaintiffs seek to enforce through a mandatory injunction." [18] Def. Mem. at 29. Plaintiffs reply (only) to Defendants' FIFRA preemption argument in their opposition papers stating that the EPA has cancelled the registration of Defendants' product and has de-registered its label, and "[f]or that reason alone, the permanent injunction cannot be preempted as a matter of law." Pl. Mem. at 30.

"To obtain a permanent injunction, a plaintiff must establish that it will be subject to irreparable injury and that there is an inadequacy of legal remedies." *Shred–It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F.Supp.2d 455, 466 (S.D.N.Y.2002). While the Second Amended Complaint alleges generally that Plaintiffs and class members "would suffer irreparable harm for which there is no adequate remedy at law," SAC ¶ 148, any injunctive relief requiring Defendants to change the labeling of Dursban products or implement a "notice program," SAC ¶¶ 148(a), 148(b), would be preempted by FIFRA. *See* 7 U.S.C. § 136v(b); *see also Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir.2002) ("an injunction against a manufacturer to change its label would represent a state-mandated labeling requirement and would therefor be preempted").

Plaintiffs contend that because the EPA has cancelled the registration of a number of pesticide products containing the active ingredient chlorpyrifos, including (at least some of) the Dursban products produced by Dow, their injunction claims cannot be preempted. *See* 65 Fed. Reg. 76, 233 (Nov. 27, 2000) ("announcing the use deletions and cancellations as requested by the companies that hold the registrations of pesticide products containing the active ingredient chlorpyrifos and accepted by EPA, pursuant to section 6(f) of ... FIFRA."). This argument is not persuasive since there is no suggestion that the FIFRA and EPA regulatory scheme is not fully in place or that the products of concern to Plaintiffs are not covered by the labeling requirements of FIFRA. *See Papas*, 985 F.2d at 518 ("FIFRA denies states the authority to require that pesticide manufacturers conform to a state law standard of care in their labelling [sic] and packaging practices."); *see also* 65 Fed.Reg. at *76, 238 ("The use of existing stocks ... will not be lawful under FIFRA as of December 1, 2000 unless such product bears an EPA-approved label ....").[19]

---

18. Plaintiffs seek a permanent injunction that would require: "(a) disclosure of all medical research and toxicology information conducted by Dow on Dursban; (b) the implementation of an appropriate notice program to alert the public and potential class members about the risks posed by Dursban; and (c) implementation of appropriate labeling requirements on products containing Dursban advising the public of the potential health risks to which they might be exposed." SAC ¶ 148.

19. Defendants have not clearly established that an injunction requiring disclosure of "medical research and toxicology information" about Dursban would conflict with, and therefore be preempted by, the labeling provisions of FIFRA. *See, e.g., Abdu–Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 84 (2d Cir. 1997) ("Delta, therefore, would seem to bear the burden of overcoming the initial presumption against preemption by establishing that enforcing the state and city laws would frustrate the purpose of the ADA."). This issue may be revisited at the summary judgment stage.

## G. Allegations of "Failure to Warn" and "Fraud on the EPA"

Defendants ask the Court to grant judgement on the pleadings as to all allegations of "failure to warn" and "fraud on the EPA," "regardless of count or claim." Def. Mem. at 22, 28. "Because FIFRA preempts such allegations as the basis for either a state law claim or part of one, judgement on the pleadings should be granted as to all such allegations." Def. Mem. at 28. Plaintiffs describe Defendants' argument as "confused" and "ill-conceived," and contend that "this Court can and should reject all of the Defendants' arguments based on FIFRA preemption of state law claims." Pl. Mem. at 24.

As noted, state law causes of action based on allegations of "failure to warn" are preempted by FIFRA. *See* Section IV.D.1., *supra*. FIFRA also preempts state-law claims that allege "fraud on the EPA." In *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), the Supreme Court analyzed state-law claims of fraud on the Food and Drug Administration ("FDA") and held that the Medical Device Amendments Act, 21 U.S.C. § 301 ("MDA"), a regulatory provision similar to FIFRA, preempted state law claims based on allegations that the defendant made fraudulent representations to the FDA in the course of obtaining approval to market a medical device. *Id.* at 343, 121 S.Ct. 1012. The *Buckman* Court found that

state-law fraud on the FDA claims would "inevitably conflict with the FDA's responsibility to police fraud consistently" and that "[a]s a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants—burdens not contemplated by Congress in enacting the FDCA and the MDA." *Id.* at 350, 121 S.Ct. 1012; *see also Nathan Kimmel*, 275 F.3d at 1205 (Where the United States Court of Appeals for the Ninth Circuit held that the preemption analysis in *Buckman* also applied to claims of fraud on the EPA under FIFRA. "The rationale articulated by the Supreme Court in *Buckman* applies with equal force to the facts before us and compels a similar result.").[20]

## V. Conclusion and Order

For the foregoing reasons, Defendants' motion for judgment on the pleadings [20] is granted in part and denied in part. Plaintiffs' RICO, Lanham Act, and express warranty claims are dismissed in their entirety. Plaintiffs' misrepresentation and injunction claims are dismissed in part and survive in part.

Counsel are requested to appear at a status/scheduling conference with the Court on April 17, 2003, at 3:00 p.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. **The parties are directed to**

---

**20.** The Ninth Circuit Court of Appeals has stated that the regulatory goals of the EPA could " 'be skewed by allowing fraud-on-the-[EPA] claims under state tort law,' " *id.* at 1206 (*quoting Buckman*, 531 U.S. at 348, 121 S.Ct. 1012), and that "Congress has afforded the EPA substantial enforcement powers under FIFRA that enable the EPA to make a measured response to suspected fraud against it," obviating the need for state law claims for the same fraud. *Id.* at 1205–06; *accord Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 666 (7th Cir.1997) ("In short, FIFRA does not allow states to second-guess EPA's labeling decisions under the guise of enforcing the requirements of FIFRA itself."); *Papas*, 985 F.2d at 519 ("FIFRA leaves states with no authority to police manufacturers' compliance with the federal procedures.").

engage in good faith settlement negotiations prior to the conference.